IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRAD ALLEN NICHOLS                )
                                  )
            Plaintiff,             )
                                  )
      -vs-                         )        Civil Action 20-734
                                  )
KILOLO KIJAKAZI,[1]               )
                                  )
      Commissioner of Social Security  )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

## Synopsis

Plaintiff Brad Allen Nichols ("Nichols") brought this action for review of the final decision of the Commissioner of Social Security denying his social security claim. Nichols applied for supplemental security income benefits in 2009, alleging that he became disabled in 2000. (R. 251-257, 286). That initial claim has been remanded by the Appeals Council once and this Court twice. Following the most recent hearing (the fifth), the ALJ denied benefits, concluding that Nichols has not been disabled between the application date of June 17, 2009 and February 5, 2010, the date of the initial ALJ's decision. (R. 2356-86). Nichols appealed. The parties have filed Cross-Motions for Summary Judgment. *See* ECF Docket Nos. 18 and 23.

## Opinion

1. Standard of Review

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021, replacing Andrew Saul.

Judicial review of the Commissioner's final decisions on disability claims is provided

by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court

to review the transcripts and records on which a determination of the Commissioner is

based, and the court will review the record as a whole. See 5 U.S.C. § 706. When

reviewing a decision, the district court's role is limited to determining whether the record

contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart,*

*312 F.3d 113, 118 (3d Cir. 2002)*. Substantial evidence has been defined as "more than

a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as

adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v.*

*Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is

"not merely a quantitative exercise." *Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir.*

*1986)* (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of

evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve,

a conflict created by countervailing evidence.  Nor is evidence substantial if it is

overwhelmed by other evidence – particularly certain types of evidence (e.g., that

offered by treating physicians)." *Id.*  The Commissioner's findings of fact, if supported by

substantial evidence, are conclusive.  42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606

*F.2d 403, 406 (3d Cir. 1979)*; *Richardson,* 402 U.S. at 390, 91 S. Ct. 1420.

A district court cannot conduct a *de novo* review of the Commissioner's decision, or

re-weigh the evidence; the court can only judge the propriety of the decision with

reference to the grounds invoked by the Commissioner when the decision was

rendered. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery*

*Corp.*, 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I

may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must

defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses,

and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are

supported by substantial evidence, I am bound by those findings, even if I would have

decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S.

Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

2. <u>The ALJ's Decision</u>

At step one, the ALJ determined that Nichols had not engaged in substantial

gainful activity since the alleged onset date. (R. 2358). At step two, the ALJ found that

Nichols suffered from the following severe impairments: depression; anxiety;

fibromyalgia; carpal tunnel syndrome ("CTS"); and obesity. (R. 2358-2363). Turning to

the third step, the ALJ concluded that those impairments, considered singly or in

combination, did not meet or medically equal the severity of a listed impairment. (R.

2363-2365). The ALJ then found that Nichols had the residual functional capacity

("RFC") to perform light work with certain restrictions. (R. 2365-2384). Finding that

Nichols had no past relevant work, the ALJ concluded that, considering his age,

education, work experience and RFC, there are jobs that exist in significant numbers in

the national economy that he can perform. (R. 2384-2385). Specifically, the ALJ

concluded that Nichols could perform the requirements of representative occupations

such as: a marker, a photo machine operator, and an office helper (R. 2385).

Consequently, the ALJ denied benefits.

3. <u>Discussion</u>

Nichols argues that the ALJ erred with respect to her evaluation of the medical

opinions and the RFC and that she improperly disregarded the vocational expert's

responses to various hypothetical questions. For the reasons set forth below, I reject

Nichols' contentions.

A. Medical Opinions

The amount of weight accorded to medical opinions is well-established.[2]

Generally, the opinions of a claimant's treating physicians are entitled to substantial

and, at times, even controlling weight. 20 C.F.R. § 404.1527. To be entitled to

controlling weight, however, the treating physician's opinion must be well supported by

medical techniques and consistent with the other substantial evidence of record. *See*

*Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). To determine the weight of a

treating physician's opinion, the ALJ may consider a number of factors, including

consistency, length of treatment, corroborating evidence, and supportability. 20 C.F.R. §

404.1527. As the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord
> treating physicians' reports great weight, especially 'when their opinions reflect
> expert judgment based on continuing observation of the patient's condition over a
> prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)
> (*quoting, Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where
> … the opinion of a treating physician conflicts with that of a non-treating, non-
> examining physician, the ALJ may choose whom to credit" and may reject the
> treating physician's assessment if such rejection is based on contradictory
> medical evidence. *Id.* Similarly, under 20 C.F.R. [404.1527](d)(2), the opinion of a
> treating physician is to be given controlling weight only when it is well-supported
> by medical evidence and is consistent with other evidence in the record.

---

[2] The regulations governing the evaluation of medical evidence were amended but the version effective
March 27, 2017 does not apply to the present case. *See* 20 C.F.R. 404.1527 (2017); 20 C.F.R.
404.1520c(2017).

*Becker v. Comm'r. of Soc. Sec. Admin.*, 403 Fed. Appx. 679, 686 (3d Cir. 201).

Although the ALJ may choose whom to credit when faced with a conflict, (s)he "cannot

reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*,

577 F.3d 500, 505 (3d Cir. 2009).

Nichols argues that the reasons the ALJ gave for discounting his treating

physicians were improper. An ALJ's rejection of a treating doctor's opinion is not

improper simply because the doctor was a treating physician. As set forth above, where

there are conflicting medical opinions, the ALJ may choose whom to credit. *Becker*, 403

Fed. Appx. at 686. As detailed in her decision in this case, that is what the ALJ did. She

considered and weighed all of the opinion evidence. (R. 2365-2384).

Nichols' argument primarily focuses upon that evidence which favors his position.

However,

> [the] question is not whether substantial evidence supports Plaintiff's claims, or
> whether there is evidence that is inconsistent with the ALJ's finding… .
> Substantial evidence could support both Plaintiff's claims and the ALJ's findings
> because substantial evidence is less than a preponderance. *Jesurum v. Sec'y of
> Dep't. of Health & Human Services*, 48 F.3d 114, 117 (3d Cir. 1995) (*citing
> Richardson v. Pearles*, 402 U.S. 389, 401 (1971)). If substantial evidence
> supports the ALJ's finding, it does not matter if substantial evidence also
> supports Plaintiff's claims. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).

*Weidow v. Colvin*, Civ. No. 15-765, 2016 WL 5871164, at * 18 (M.D. Pa. Oct. 7, 2016).

Thus, the question before me is whether substantial evidence supports the ALJ's

findings. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). I find that it does.

With respect to Dr. Molter, the ALJ discounted the opinions because they were

inconsistent with other record evidence, with Nichols' activities of daily living, and with

Dr. Molter's own progress notes, which reflected normal examination findings. (R. 2373-74, 2381, 549, 653, 656-61, 844, 847-48, 851-52, 856-57). These are appropriate bases for discounting opinion evidence and there is substantial evidentiary support for his conclusions in this regard. *See* 20 C.F.R. 404.1527; 416.927.

The ALJ's findings with respect to opinions proffered by Drs. Smuckler and Mantella similarly are supported by substantial evidence of record. Specifically, the ALJ found that these opinions were inconsistent with and unsupported by their own contemporaneous clinical findings. (R. 2384). Further, the findings were at odds with the other evidence of record, including the lack of any musculoskeletal abnormalities in any other medical records as well as Nichols' activities of daily living. (R. 2373-74 and exhibits cited therein, 2384). Additionally, neither Drs. Smuckler nor Mantella referenced Nichols' noncompliance with such prescribed treatments as physical therapy and psychotropic medications. (R. 2384). Again, as set forth above, these are appropriate reasons for discounting medical opinions and the ALJ's findings in these respects are supported by substantial evidence of record.

As to Dr. Fackler's opinion that Nichols was temporarily disabled between 2005 and 2006 due to asthma, the opinion predates the relevant time period (2009) by four years. Further, it is a declaration of disability and, as such, is not entitled to any deference because such findings are reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d). Moreover, as the ALJ noted, the declaration of disability on the Employability Assessment Form "was unsupported by any contemporaneous objective medical evidence or any treatment records from the doctor completing the form." (R.

6

2379). Indeed, the earliest treatment records submitted by Dr. Fackler are dated two years *after* he tendered that opinion. (R. 426-39).

Similarly, the ALJ's consideration of Mr. Altman's opinion is supported by substantial evidence of record. For instance, the ALJ observed that Altman's findings were based primarily upon subjective allegations rather than clinical findings. (R. 2381, 572). Further, Altman's conclusions that Nichols had "conflictual" social relationships and / or social phobia were inconsistent with other findings such as that he had "appropriate" relationships with his peers, that he celebrated his birthday with friends, and that he went to the shooting range with a friend. (R. 2381-82). Additionally, findings that Nichols suffered from impairments that were of listings-level severity which precluded work were at odds with the numerous referrals to occupational and vocational rehabilitation as well as the statement that he had no restrictions in daily activities. (R. 2381). Similarly, references to "repeated" episodes of decompensation were also unsupported by substantial evidence of record in that there was no documentation that Nichols required any increased level of mental health treatment. (R. 2382). Altman also opined that Nichols had marked limitations in daily activities yet found that he was independent in hygiene / grooming, cleaning, cooking, using public transportation, paying bills, and shopping. (R. 2382). The ALJ's assessment in this regard is in accordance with the law and is supported by substantial evidence of record.

Finally, the ALJ's assessment of Dr. Eisler's opinion is supported by substantial evidence of record. The ALJ found that Eisler's opinion was unsupported by objective medical evidence and appeared to be based upon Nichols' subjective allegations during a one-time evaluation. (R. 2380). Further, the limitations Eisler espoused were at odds

7

with the overall lack of documented clinical psychiatric abnormalities in the medical records, with Nichols' range of daily activities, and with the repeated efforts to involve Nichols with occupational and vocational rehabilitation. (R. 2380).

In sum, I find that the ALJ's assessment of Nichols' treating physicians is supported by substantial evidence in this regard. Therefore, remand is not warranted.

B. RFC

Nichols also argues that the RFC was not supported by substantial evidence of record. His first argument is based upon the contention that the ALJ should have incorporated the functional limitations espoused by his treating physicians. For the reasons set forth above, I find that the ALJ's discounting of that opinion evidence is supported by substantial evidence of record. As such, she was not obligated to incorporate these functional limitations.

Nichols next argues that the ALJ failed to address his gastrointestinal impairments in the RFC. I disagree. First, I note that the ALJ engaged in a detailed analysis of Nichols' gastrointestinal complaints in connection with the second step of the analysis. (R. 2359). Reviewing a number of exhibits, the ALJ concluded that the evidence indicated that Nichols' Crohn's disease was stable and asymptomatic during the period at issue. (R. 2359). A diagnostic colonoscopy in 2012 showed no evidence of Crohn's. Testing in 2013 for celiac disease was negative. (R. 2359). A repeated colonoscopy in 2015 was also benign. (R. 2359). The ALJ observed a notation in a 2016 record that Nichols' Crohn's disease has "not been active for about 10 years." (R. 2359). Repeated biopsies were normal and unremarkable with only "mild" findings. (R. 2359). There was "no etiology" for Nichols' subjective allegations of excruciating pain,

frequent bathroom needs, or other significant symptoms of functional limitations. (R. 2359). Treatment was conservative in nature, with instructions of high fiber and increased water intake and exercise. (R. 2359). Further, when formulating the RFC, the ALJ noted that she considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence…." (R. 2365). The ALJ also discussed medical opinions relating to gastroenterology issues. (R. 2379). Thus, contrary to Nichols' contentions, the ALJ did in fact address his gastrointestinal issues and her assessment of such issues is supported by substantial evidence of record.

C. Hypotheticals

Finally, Nichols takes issue with the ALJ's consideration of the VE's testimony. He contends that the ALJ improperly discounted certain of the VE's responses to hypothetical questions. Nichols's argument is unconvincing. ALJs routinely pose a variety of hypotheticals to a vocational expert in order to assess the claimant's ability to engage in employment under various scenarios. *Seney v. Com'r. of Soc. Sec.*, 585 Fed. Appx. 805, 809 (3d Cir. 2014). "'While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.'" *Seney*, 585 Fed. Appx. at 809, *quoting, Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Here, the ALJ relied upon the VE's answers to those hypotheticals which she found accurately portrayed Nichols's limitations. She was not compelled to

include in his findings the VE's answers to hypotheticals which did not accurately reflect

those limitations. As such, I find no error or basis for remand.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRAD ALLEN NICHOLS          )
      Plaintiff,          )
                    )
   -vs-          )          Civil Action No. 20-734
                    )
KILO KIJAKAZI,          )
                    )
Commissioner of Social Security, Defendant.          )

AMBROSE, Senior District Judge.


**ORDER OF COURT**

Therefore, this 21ˢᵗ day of January, 2022, it is hereby ORDERED that the Motion

for Summary Judgment (Docket No. 18) is DENIED and the Motion for Summary

Judgment (Docket No. 23) is GRANTED. The Clerk of Courts shall mark this case

"Closed" forthwith.

BY THE COURT:

Donetta W. Ambrose
United States Senior District Judge

11